UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETTE NASH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.  CV 15-00047-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**INTRODUCTION**

Jeannette Michelle Nash ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB") following an administrative law judge's ("ALJ") decision that Plaintiff was not disabled under the Social Security Act.[1] Administrative Record ("AR") 25. For

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

## II.

## PROCEEDINGS BELOW

On December 7, 2011, Plaintiff applied for DIB alleging disability beginning August 26, 2009 (her alleged onset date ("AOD")). AR 17. Plaintiff's claim was denied on April 24, 2012. *Id.* On June 7, 2012, Plaintiff requested a hearing, which took place on April 3, 2013. *Id.* Represented by counsel, Plaintiff testified at that hearing, along with an impartial vocational expert ("VE"). *Id.* On May 3, 2013, the ALJ found that Plaintiff was not disabled. AR 25. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. AR 1–6. Plaintiff then filed the instant action in this Court on January 13, 2015. Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled. 20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD. AR 19. At **step two**, the ALJ found the medical evidence established that Plaintiff "has the following severe impairments: status post spinal surgeries; Humira induced psoriasis, and affective disorder." *Id.* At **step three**, the ALJ found Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 21.

At **step four**, the ALJ found that Plaintiff possessed the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except: lift/carry 20 pounds occasionally, 10 pounds frequently; sit/stand option; no climbing ladders, ropes, scaffolds; occasionally climb ramps and stairs, balancing, stooping, crouching, kneeling, crawling; only a low stress job, defined as having only occasional decision making required and occasional changes in the work

setting." *Id.* at 22. Based on the foregoing, the ALJ found that Plaintiff was unable to perform any of her past relevant work. *Id.* at 24. At **step five**, however, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* (citations omitted). Accordingly, the ALJ found that Plaintiff was not disabled pursuant to the Social Security Act. *Id.* at 25.

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Reasonable inferences drawn from the record may constitute "substantial evidence." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

To determine whether substantial evidence supports a finding, the Court must consider the record as a whole, weighing evidence that supports *and* detracts from the ALJ's conclusion. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). If evidence can reasonably support either affirming or reversing the ALJ's finding, the reviewing court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006). The Court may review only the reasons stated in the ALJ's decision, and may not

affirm on a ground on which the ALJ did not rely. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the … nondisability determination.'" *Robbins*, 466 F.3d at 885 (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

## IV.
## DISCUSSION

Plaintiff raises three issues for review: (1) whether the ALJ erred in applying little weight to the opinions of Plaintiff's treating rheumatologist and treating psychiatrist; (2) whether the ALJ properly evaluated Plaintiff's subjective symptoms and credibility; and (3) whether the ALJ erred by not including rheumatoid arthritis and migraines headaches as severe impairments at step two of the five-step sequential evaluation process. Memorandum in Support of Plaintiff's Complaint ("Pl. Memo.") at 1.

### A. **Plaintiff's Treating Physicians**

Plaintiff contends that the ALJ erred in according little weight to the opinions of treating rheumatologist Christine Leehealey, M.D., and treating psychiatrist Sarabjit Sandhu, M.D. Pl. Memo. at 9. Defendant contends "substantial evidence supported the ALJ's evaluation" of Dr.'s Leehealey and Sandhu's opinions. *See* Defendant's Brief in Support of Defendant's Answer ("Def. Memo.") at 2.

#### 1. **Dr. Leehealey's Opinion**

On February 24, 2013, Dr. Leehealey completed a Physical Residual Functional Capacity Questionnaire regarding Plaintiff's physical condition. *See* AR 811-14. In that questionnaire, Dr. Leehealey noted that she had seen Plaintiff every three to four months since 2009; that Plaintiff had rheumatoid arthritis ("RA"), and osteoarthritis in her lumbar spine; and that Plaintiff's overall prognosis was fair. *Id.* at 811. Dr. Leehealey further noted that Plaintiff suffered from fatigue, joint pain, spinal pain, numbness, joint swelling, and decreased range of motion; that Plaintiff

4

was still adjusting to her medications, and, in fact, was in the process of changing to a new medication due to side effects of Humira; and, due to her treatment, suffered from severe rashes, alopecia, fatigue, and headaches. *Id.* Dr. Leehealey also noted that Plaintiff's impairments had lasted or were expected to last at least 12 months, and that they were "*reasonably consistent* with the symptoms and functional limitations described in" the questionnaire. *Id*. at 811-12 (emphasis in original).

Dr. Leehealey opined that Plaintiff's symptoms would "constantly" interfere with her attentiveness and ability to concentrate while performing even simple work tasks and that she was incapable of even low stress jobs because her symptoms are constantly debilitating. *Id*. at 812. Dr. Leehealey also opined that she could walk only one city block without rest or severe pain; could sit for about two hours and stand/walk for less than two hours in an eight-hour working day; would need a job that permits shifting positions at will and accommodates her need to walk for 10 minutes every 30 minutes; would require 15 minute breaks every hour; and would need an assistive device to engage in occasional standing or walking. *Id*. at 813.

Dr. Leehealey further opined that Plaintiff could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift over 10 pounds; could hold her head static occasionally, but never look up, down, right or left for any sustained period of time; could rarely climb stairs and could not twist, stoop, crouch, or climb ladders; and had significant reaching, handling, and fingering limitations. *Id.* at 813-14.[2] Finally, Dr. Leehealey opined that Plaintiff's impairments would produce good and bad days and cause her to miss more than four days of work each month. *Id.* at 814.

## 2. **Dr. Sandhu's Opinion**

On March 5, 2013, Dr. Sandhu completed a Mental Residual Functional Capacity Questionnaire regarding Plaintiff's mental condition. *See* AR 817-21. In

---

[2] Dr. Leehealey opined that Plaintiff could grasp, turn, or twist objects five percent of an eight-hour day, could perform fine manipulations with her fingers 20 percent of an eight-hour day, and could not perform any reaching activities. *Id.* at 814.

5

that questionnaire, Dr. Sandhu noted that he had seen Plaintiff every two or three months since 2006, and listed three medications that she had been prescribed. *Id.* at 817. Dr. Sandhu further noted that Plaintiff exhibited depression, low energy, poor concentration, and chronic pain, and that her prognosis was "fair." *Id.* Dr. Sandhu then identified a number of signs and symptoms Plaintiff possessed, including loss of interest in activities, feelings of worthlessness or guilt, persistent anxiety, mood disturbance, trouble thinking or concentrating, emotional liability, motor tension, and sleep disturbance. *Id.* at 818.

Dr. Sandhu opined that Plaintiff's mental impairments significantly limited her ability to do daily work-related activities in a work setting. Specifically, with regard to the mental abilities and aptitudes needed to do unskilled work, Dr. Sandhu opined that Plaintiff had "no useful ability to function" in one category, would be "unable to meet competitive standards" in eight categories, was "seriously limited but not precluded" in three categories, and was either "limited but satisfactory" or "unlimited or very good" in only four categories. *Id.* at 819. Regarding the mental abilities and aptitudes needed to do semiskilled and skilled work, Dr. Sandhu opined that Plaintiff was unable to meet competitive standards in three categories, and was seriously limited but not precluded in the remaining category. *Id.* at 820.

Dr. Sandhu further noted that Plaintiff's impairments had lasted or could be expected to last at least 12 months, and that they were "reasonably consistent with the symptoms and functional limitations described in" his evaluation. *Id.* at 821.

### 3. **ALJ's Decision**

The ALJ gave the opinions in Dr. Leehealey's Physical Residual Functional Capacity Questionnaire and in Dr. Sandhu's Mental Residual Functional Capacity Questionnaire little weight upon finding that "the extreme limitations therein [were] inconsistent with the reports from their treatment notes showing that the claimant's symptoms were reasonably under control." AR 24. The ALJ specifically noted that Plaintiff's "pain management physician reported on December 28, 2012, that [her]

pain was controlled by her medications[,]" and that, "[o]n February 13, 2013, [she] reported that she was better able to cope with her pain." *Id.*

### 4. Applicable Law

Courts give varying degrees of deference to medical opinions depending on the type of physician providing the opinion: (1) "treating physicians" who examine and treat; (2) "examining physicians" who examine, but do not treat; and (3) "non-examining physicians" who neither examine nor treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). A treating physician's opinion is generally entitled to greater weight than a non-treating physician's opinion, and an examining physician's opinion is generally entitled greater weight than a non-examining physician's opinion. *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). If a treating physician's opinion is contradicted by another medical opinion, an ALJ must give "specific and legitimate reasons" for rejecting it. *Orn,* 495 F.3d at 633. If a treating physician's opinion is not contradicted, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. Here, no contradictory opinion has been identified. Thus, the ALJ's reasons for discounting the opinions of Dr.'s Leehealey and Sandhu must be clear and convincing.

### 5. Analysis

An ALJ may discount a treating physician's opinion when it is contradicted by the treating physician's own medical records. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). However, minor inconsistencies in a physician's opinion do not constitute a sufficient reason to reject it. *See Sprague v. Bowen*, 812 F.2d 1226, 1230-31 (9th Cir. 1987). Furthermore, an ALJ may not manufacture a significant conflict where a review of the medical evidence over the entire relevant time period suggests otherwise. *See, e.g., Garrison,* 759 F.3d at 1013 (ALJ improperly created conflict by asserting that claimant's treating physician's records showed consistent improvement when they actually showed consistent radiculopathy which responded only very briefly and partially to treatment). Nor may an ALJ "improperly cherry-

pick[]" or selectively reference only a non-representative treatment note or notes to support a conflict with a treating physician's opinion. *See, e.g., Ghanim,* 763 F.3d at 1162 n.6, 1164 (ALJ's example of one note, out of more than one hundred pages, was not substantial evidence of a conflict between the treatment notes and opinions regarding the severity of the plaintiff's impairments).

Plaintiff argues that the ALJ wrongfully "provided only two isolated citations from the over four hundred pages of medical records" to support his conclusion that Dr.'s Leehealey and Sandhu's opinions were inconsistent with their treatment notes showing that Plaintiff's symptoms were under control, and that those "two citations consist of isolated phrases … presented out of context" and do not reflect the record as a whole. Pl. Memo. at 10-11. Thus, Plaintiff argues that the ALJ's conclusion is "inadequate." *Id*. at 11. This Court agrees.

### a. Dr. Leehealey

The record has 17 of Dr. Leehealey's treatment records, dating from August 25, 2009 to February 4, 2013. AR 594-633, 733-48. The ALJ's decision cites nine. The ALJ notes that Dr. Leehealey prescribed medications on August 25, 2009, and that Plaintiff reported improvement in her feet and hands on February 22, 2010, *id.* at 19, 594-96, 606-08; that Plaintiff's RA was stable on July 1, 2010 and January 3, 2011, *id.* at 23, 612-14, 618-20; that Dr. Leehealey noted that Plaintiff was going to pain management (but her pain was "not severe") on July 25, 2011, and that she had less back pain and "her peripheral arthralgias were okay" on November 21, 2011, *id*. at 20, 624-29; and that she felt "pretty good" on March 14, 2012—and had done "considerably well" without medication—and that her RA was stable on September 18, 2012. *Id.* at 21, 630-32, 742-44.

On reviewing the record, it is clear that the foregoing references tell only part of the story. For example, in addition to noting that Plaintiff reported improvement in her feet and hands on February 22, 2010, Dr. Leehealey also noted intermittent numbness in her fingers and "severe radicular lumbar pain" warranting an MRI and

8

a pain management referral. *Id.* at 605, 607. On July 1, 2010, Dr. Leehealey noted Plaintiff "is doing well in terms of her RA…." *Id.* at 613. However, she completed that sentence by noting that "other factors [were] preventing [her] return to work[,]" namely, her right foot neuroma (which caused severe pain) and lumbar spine pain. *Id.* at 612-13. On January 3, 2011, Dr. Leehealey also noted that Plaintiff's RA was "relatively stable," but further noted that it worsened in cold weather and that "[h]er elbows, knees and feet are worse." *Id.* at 618. On November 21, 2011, in addition to noting that Plaintiff said her back was less painful ("in terms of the sciatica"), Dr. Leehealey further noted that Plaintiff was not sleeping well, that she had some facet arthritis pain, and that her peripheral arthralgias were "ok *for now- no flare up yet.*" *Id.* at 627 (emphasis added). The ALJ's decision, by contrast, merely states that her "peripheral arthralgias were okay." *Id.* at 20.

Even the one negative treatment note cited by the ALJ is not complete. That is, while Dr. Leehealey did indeed note on January 15, 2013 that Plaintiff was taken off Humira because it caused psoriasis, she further described the extent of the issue: "[Plaintiff] still has psoriasis and eczema on her hands, scalp (she is wearing a wig), on her plantar feet. Her foot rash is so severe it is hard to walk with shoes. The psoriasis is secondary to the humira. She feels the Humira works well on her joints but if she misses a dose she will have a flare up." *Id.* at 21, 739, 741.

### b. *Dr. Sandhu*

The record contains 10 of Dr. Sandhu's treatment records, dating from March 29, 2011 to February 13, 2013. AR 568-77, 750-63. The ALJ's decision cites six. Specifically, the ALJ noted that Plaintiff "reported pain issues" on March 29, 2011, but stated that her depression was improving, she had been more social, her anxiety decreased, and "she felt happier overall," *id.* at 20, 568-69; that Plaintiff reported an improved mood on June 28, 2011, *id.* at 20, 572-73; that Plaintiff reported her neck surgery went well and her pain problems were not as severe, and that she was not as depressed and managed her anxiety better, on March 27, 2012, *id.* at 21, 762-64;

that Plaintiff reported increased depression, anxiousness, and pain on October 31, 2012, *id.* at 21, 756-58; that Plaintiff's symptoms were improved and under control with treatment on November 27, 2012, *id.* at 21, 23, 753-55; and that Plaintiff was better able to cope with her pain on February 13, 2013. *Id.* at 21, 24, 750-52.

However, in addition to noting that Plaintiff's depression, social interactions, and anxiety were improved (and that she "felt happier overall") on March 29, 2011, Dr. Sandhu further noted that Plaintiff "need[ed] further stabilization of mood and behaviors in order to be manageable in a community setting." *Id.* at 569. On June 28, 2011, in addition to noting that Plaintiff's mood was improved, Dr. Sandhu also noted that Plaintiff felt "overwhelmed" and again stated that she would need further stabilization of mood and behaviors to be manageable in a community setting. *Id.* at 572-53. On March 27, 2012, in addition to noting that Plaintiff was managing anxiety better and was less depressed, Dr. Sandhu noted that Plaintiff still required "further treatment to improve the level of function, including social, emotional and cognitive[,]" and identified many of the symptoms noted in the opinion summarized in § IV(A)(2), including depressed mood, insomnia, loss of energy, anxious mood, feeling worthless, and impaired concentration. *Id.* at 762-63. And on February 13, 2013, in addition to noting that Plaintiff had been better able to cope with her pain, Dr. Sandhu noted that her "depression remain[ed] prominent." *Id.* at 752.

The Court finds that the ALJ selectively referenced only non-representative treatment notes to support his finding. *Ghanim,* 763 F.3d at 1162 n.6, 1164. While the ALJ need not discuss each piece of evidence in the record, *Howard v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003), he is required to view evidence "in light of the overall diagnostic record." *Ghanim,* 763 F.3d at 1164 (citations omitted); *see also Reddick*, 157 F.3d at 725 (ALJs satisfy substantial evidence requirement "by setting out a detailed and thorough summary of the facts and *conflicting clinical evidence*, stating his interpretation thereof, and making findings") (emphasis added). Here, it
///

does not appear that the ALJ has done so. Therefore, the Court finds that the ALJ improperly gave "little weight" to the opinions of Dr.'s Leehealey and Sandhu.

**B.** **Plaintiff's Credibility**

Plaintiff contends that the ALJ erred in rejecting the credibility of Plaintiff's hearing testimony. *See* Pl. Memo. at 17-22. Defendant, in turn, argues "substantial evidence supported the ALJ's finding that Plaintiff's testimony of subjectively disabling symptoms was not fully credible." Def. Memo. at 8.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms," an ALJ engages in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). If a claimant presents such evidence, subjective testimony as to the severity of the symptoms may be rejected only on finding evidence of malingering or expressing clear and convincing reasons for doing so. *Benton ex rel. Benton v. Barnhart,* 331 F.3d 1030, 1040 (9th Cir. 2003). General findings are insufficient. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Lester,* 81 F.3d at 834.[3]

Here, "[a]fter careful consideration of the evidence," the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible "for the reasons

---

[3] An ALJ may consider a wide range of factors in assessing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation (*i.e.* reputation for lying, prior inconsistent statements concerning symptoms, and testimony that appears less than candid); (2) an unexplained or inadequately explained failure to seek treatment or adhere to a treatment plan; and (3) daily activities. *Ghanim,* 763 F.3d at 1163; *see also* 20 C.F.R. § 404.1529; Social Security Ruling ("SSR") 96-7p.

11

explained in this decision." AR 23. The ALJ gave three reasons: (1) "the treatment notes show that with appropriate treatment, [she] experienced significant reduction in her symptoms[;]" (2) her inability to articulate her limiting functional restrictions lessened her credibility; and (3) she admitted that her symptoms had improved. AR 23. Because no malingering was alleged, his reasons must be clear and convincing.

As an initial matter, even if the Court agreed that the treatment notes showed significant symptom reduction, a claimant's credibility cannot be discredited on that basis alone. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (an ALJ "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence"). Otherwise "there would be no reason for the adjudicator to consider anything other than medical findings." *Penny v. Sullivan*, 2 F.3d 953, 957 (9th Cir. 1993). Here, however, the Court is not convinced that the treatment notes show a "significant reduction." The ALJ cites a January 19, 2012 pain management appointment where Plaintiff reported that her pain was a "3" on a 10-point scale in order to support his conclusion. AR 23. But the ALJ neglects other appointments where Plaintiff reported a much higher number, including a "6" on April 11, 2011, September 8, 2011, December 13, 2011, May 1, 2012, and December 28, 2012; "7" on September 21, 2012 and January 23, 2013, "8" on October 23, 2012; and "9" on February 15, 2013. *Id*. at 640, 642, 659, 671, 860, 862, 864, 868, 870, 880. Furthermore, given the discussion in § IV(A)(5)(a)-(b), it is not clear that Plaintiff's RA was stable and under control, or that her depressive symptoms had improved to the point where she could resume normal work activities. *See id.* at 762-63 (noting that Plaintiff needed "further treatment to improve the level of function, including social, emotional and cognitive"), 752 (noting that Plaintiff's depression remained "prominent").

//

//

12

The Court also finds the ALJ's second reason unconvincing. In his decision, the ALJ stated as follows:

> Despite the emotional testimony at the hearing, the claimant had difficulty clearly stating what exactly her limiting functional restrictions were which lessens the credibility of [her] testimony. Instead, the claimant appeared preoccupied with the perceived effect that her illnesses have had on her life.

AR 23. The Court is not convinced, however, that Plaintiff should have her testimony discredited based on her inability to concisely articulate her limiting functional restrictions, or the ALJ's frustration therewith.[4] And moreover, it appears as though Plaintiff did, eventually, articulate such restrictions. Plaintiff stated, for example, that she could sit for only 35 minutes at a time before needing to stand up,[5] could stand for only 15 minutes at a time before needing to sit, could lift less than 20 pounds, and could only walk to her mailbox and back before needing a break. AR 44-45.

Finally, while Plaintiff did testify to some improvement, the mere fact that a person "makes some improvement does not mean that her impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001). The ALJ did not specify how some improvement is inconsistent with Plaintiff's claims concerning her limitations. In sum, the Court finds that the ALJ failed to give clear and convincing reasons for finding Plaintiff's

---

[4] The following exchange occurred during the ALJ's questioning of Plaintiff:
    ALJ:    All right. Counsel, you want to question your client. I'm not getting anywhere.
    ATTY:    I'm sorry?
    ALJ:    I'm not -- it's just taking -- I don't know what to ask her. She could go on forever.
AR 44. The ALJ then resumed his questioning and requested that Plaintiff provide specific information about her various limitations. *Id.*

[5] Plaintiff asked if she could and then did stand for part of her testimony. *Id.* at 46.

testimony not credible. Thus, remand is warranted on this ground so the ALJ may reassess that determination and decide whether a revision of her RFC is warranted.

### C. ALJ's Step Two Severe Impairment Findings

Plaintiff contends that the ALJ erred by omitting RA and migraine headaches as severe impairments at step two of the five-step sequential evaluation process, at which "the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); Pl. Memo. at 22. Defendant argues any such error was harmless because the ALJ found other severe impairments and therefore had to consider the effect of all impairments, both severe and non-severe. Def. Memo. at 10 (citing SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); SSR 85-28, 1985 WL 56856, at *3). In reply, Plaintiff concedes that the ALJ was required to consider the effects of severe and non-severe impairments when assessing RFC, but argues that there is no evidence to suggest that the ALJ did so. Plaintiff's Reply Brief at 9. The Court declines to consider this claim since it has determined above that this matter will be remanded for further consideration. On remand, the ALJ should reconsider the limitations imposed by Plaintiff's impairments, both severe and non-severe, and decide whether a more restrictive RFC is warranted.

///
///
///
///
///
///
///
///

V.

## CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 29, 2015

/s/ Rozella A. Oliver
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**